All right then, we're ready to call our next case, Codrington v. Steadfast Insurance Co. Clarendon American Insurance Co. And we will hear from counsel for the appellant. Ms. Lawrence. Good morning, Rayya Lawrence, on behalf of the appellant James Codrington. I would like to reserve four minutes, please, for a moment. Okay. And as I am the last person between everyone's lunch, I would prefer to forego my three minutes and just deal with any questions the panel has for me. If we conclude the statute of limitations as wrong, does the personal jurisdiction argument even matter? Do we have to reach it? Yes, because statute of limitations is a personal defense, and you would have to raise it as the party if it has not been raised by CRC. And so therefore, we would say you can't reach it on behalf of CRC, if I understand your question correctly. Well, if we said that the statute of limitations had run based on Steadfast's arguments, in other words, they did raise it, they argued it, and the statute had run, what would make anything different with respect to CRC as opposed to Steadfast that would prompt us to say, we can't look at the statute of limitations? If we've already said, as respecting one party, it's wrong. Well, statute of limitations is usually something that runs with a party, and it's an affirmative defense. It has not been raised by CRC. So what I'm hearing the court say is, can we consider the affirmative defense of CRC if they have not raised it? But it's been raised by another party. I mean, arguably, if the statute of limitations has run, and even if you bring CRC back into the case, and of course, we vehemently disagree that the statute of limitations has run. We're gonna get to that. So practically speaking, even if CRC was brought back to the case on PG grounds and allowed to pursue, they would raise it knowing the outcome of this case. But is that a precedent that we want set that somebody could piggyback on the statute of limitations or affirmative defense of another party? I don't think so. I think we'd allow it to proceed. Yeah, go ahead and explain why we wouldn't. And that's why I posed my question to you as, what's different? What would be different? Nobody has identified anything that would say, oh, with respect to CRC, it's different because there would be equitable tolling as to them. It would be different because of some other factor. My question to you is, what would make it different? Or would it really truly be a waste of everybody's time, effort, money, et cetera, to just say, now let's argue about statute of limitations if it's already been decided and there's no difference? Well, because the issue has, I mean, because statute of limitations in the context of CRC and CRC's conduct has not been briefed by anyone. I have not looked at it in that context. If you would like a separate letter on that, sure. But I don't anticipate that it would be different. I do not. But it could be, you're saying. Because it has not been raised by anybody. And while I would love to be able to just magically answer a question like that, I usually- I love magic, sorry. All right, so let's move on to some other stuff then. So it looks like back in 2009, Steadfast said, we're not going to cover cross-tech. We've covered this, we're not going to identify. And then there's a consent judgment years later. So did you ever renew or formally request that Steadfast identify after the consent judgment? I didn't see a count in the complaint for that. I didn't see a clear request. I see some occasional references to failure to identify. So when does that start to run? Or is that even in this case? Oh yes, it's- So when did you ask for it? So the Steadfast's denial letter occurred in 2010. Okay. August of 2010. And then litigation pursued, continued in the Superior Court on the underlying claims. And then the consent judgment was executed around June of 2018. 2018. Is there any request after June, 2018? The suit was filed. They wouldn't have known. Where in the record, do you send a formal demand letter or is there a... I did not see a count in the complaint that sued for contribution or indemnity on that ground. So I don't see anything post 2018 apart from you filed a suit raising other grounds. No, the suit raised the exact same ground. Okay, so take me to the complaint. Let's go to the complaint and you tell me where the complaint preserved this claim. And the claim account that my colleague is talking about is an identification claim. Because all of your counts in the complaint is a declaratory judgment on this assignment, a violation of Title 22 of the Virgin Island Code, Section 2, which is like the good faith and honesty imposed upon insurers, a negligent and intentional misrepresentation claim and a fraud claim as to Steadfast. Where, apropos of my colleague's question, where is there an indemnification count? Okay, now I understand the question. All of those claims against Steadfast can only arise if Steadfast had a duty under, as the insurer of the claims, to defend and indemnify. All right, I've got the second amended complaint up in front of me. It starts at Joint Appendix 279. Hold on, one second, let me look on that. What contour language covers this? Take a moment, find it. And your citation was 279? Yeah, the second amended complaint starts in 279. I see a declaratory judgment count at 285, starting paragraph 38. I see a violation of the Vergeon's Code, count two. And I see a violation of Vergeon's Code, count three, starting at paragraph 45. I see a breach of contract claim at count 50. I see negligent underwriting, negligent underwriting, negligent intentional misrepresentation, intentional misrepresentation, fragile contract. I don't see any count that is an indemnity count. Thank you. Course and indulgence have a trade, oh, got the wrong volume. Volume two. Volume two, 279-293, for negative one. Okay. Okay, my dear, 279. Okay. So count one is a declaratory judgment to the extent defendants contest the argument or the validity of the terms. Okay, that's an assignment. Count two, violation of the insurance code. Exactly, so title 22 of the BIC section one says, all insurance carriers owe a duty of good faith and honesty in equity and insurance matters. That includes the duty to defend and the duty to indemnify your insurer. So I know- You don't have a case that says that. I'm sorry? You don't have a case that says that, because that's not what the statute says. The statute talks about good faith and honesty in dealing with the insurers. And that's exactly what Crosson, who now James Codrington is signing up, he is the insurer. I understand now my point is that the title 22 section two claim is a good faith and honesty claim. A claim of indemnification is a, it appears in the Virgin Isles as a common law claim. It's a different cause of action that has different elements. Yeah. We don't, I don't agree with that. I don't see that that's a separate claim. The duty to defend- That's the question that's being put to you. No, I do not believe that those are separate claims. The duty to defend and duty to indemnify are claims derived from the contractual obligations between an insurer and its insurer. Okay. Stick with us here for a second. Your title 22 section two claim, the statute by its terms is about good faith and fair deal. That's what it says. Now, the question being put to you, and you are, it appears, arguing that it's like the famous ragu sauce. It's all in there. That indemnification is in there. Contribution is in there. Everything else is in section two because it sweeps in with good faith and fair dealing. Any other kind of claim like that? Is that the argument that you're making or have I misunderstood you? The argument is that, yes, indeed. The relationship between an insured and insurer, at its core, I procured insurance for you to accomplish two things for me, to defend me and indemnify me if something goes wrong. That's at the core of the relationship. Okay, so the question that was put to you is, do you have a case that says when you never utter the word indemnification, but you cite section two, you have made an indemnification claim? That's the question that's being put to you. Do you have some piece of authority? You're a very fine lawyer, and I'm sure we could just take it on your say-so. Do you have somebody else's say-so that we can look to? Okay, so the whole case against Steadfast has been litigated under the premise that you tendered a denial of defense in this case and that was erroneous. We would have no case against Steadfast at all, but for their duty to indemnify and defend under the contract. So to the extent the complaint doesn't say those words explicitly, that's a simple amendment to a plea. Okay, so the best case for you is paragraphs 42 and 43 say, Steadfast and Clark have been briefed for your duty to timely and adequately defend and indemnify. So your position is, when you use the word indemnify, it doesn't matter that you're citing VI code section two et al. The et al should be read to include all the common law principles that relate to what the insurer should do. And I'm just wondering, how is that enough notice to Steadfast that they're supposed to be arguing, contesting indemnity under the common law and not just good faith under section two? If there was a problem with the pleadings in this case, there are specific motions that are filed to deal with that. Well, we're stuck with the pleading in front of us. Well, and that's the worst. And so the pleading should be construed in a manner that's favorable to the plaintiff and to the place that the plaintiff brought. And the whole assignment that was attached to the complaint was about Crosland and his entities not being given a defense indemnification. That was an attachment to the complaint. So there can be no confusion that this is at core, what is at issue here. But even if that's the case, and let's say you had made that claim, this contract, the Steadfast contract specifically excludes personal injuries arising from automobile accidents. So there isn't even a contraction. I don't even know if you would be able to amend without hitting futility squarely at the end of the road because of the way the contract is written. We disagree. We have different theories of liability as to how that contract actually doesn't say so. One of our core alternative arguments is if indeed what you're saying is true, you have full knowledge of the full scope of what Crosland was doing and where he was doing it. And that's your point, that's your fraud claim or your misrepresentation claim. You guys, according to the allegations in the complaint, there was a request to fully insure for all conduct. You insurance companies didn't do it. It's a fraud. And if that's the case, then the statute of limitations for that would have accrued when the contract was insured because the contract would have given notice to the insurer what it covered and what it didn't. So, I mean, isn't that a fraud claim for you? No, I disagree with that. I do not believe that the fraud claim would have given rise to that until there was the denial of the letter one. And two, there was actually something that resulted from the denial, which is Crosland was then forced to enter into a consignment and an agreement. There was no injury at the time of the letter. There was no injury. There was no injury. And with all of these calls of action. There was no injury when Crosland was told specifically by Steadfast. Yeah, this isn't within the terms of our contract. We're not doing anything for you. That letter from Steadfast, you don't think that has any legal significance? Well, let's just say yes or no. Start with the yes or no. Do you think that has no legal significance? No, it does not. And we're not with a full cloth here. When we surveyed all of the jurisdictions, they all agree, most of them agree, a cause of action such as the one brought here cannot accrue until such time as there's actually an injury. And that injury isn't, I'm not defending you. I'm not doing anything for you. That's not, people, you're telling me that every jurisdiction in the country takes a denial of coverage and a denial of a duty of defense, says we're doing nothing for you. They don't treat that as an event of legal significance. They don't. On the cases, we said a lot of cases in our- Good enough, we got you. Yes, absolutely, and the reason- We got you. You're five minutes past your time. Oh, I'm sorry. So let's see if we got anything, anything? Okay, we'll have you back on rebuttal. All right, thank you very much. And we will hear first from, I think we're gonna hear first from CRC. I've got CRC with 10 minutes. So we'll hear from you first and then we'll pick up with Steadfast Counsel. Good morning. May it please the court, Veronica Meza on behalf of the appellee CRC Insurance Services, Inc. Your honors, we believe that the district court was correct in finding that it did not have personal jurisdiction over CRC. Why don't you start with where Judge Beavis started with your colleague, Ms. Lawrence, and tell us whether she's right, that it would be a mistake for us to just go straight to the statute of limitations. If we thought the statute had been run for Steadfast, would we be in error to say, well, it looks like it's run as the CRC as well? Or should we be held up by her assertion that nobody's briefed that, nobody's argued it, you shouldn't go there when nobody's gone there? Well, I certainly don't dispute that it was not raised by CRC, my client. And in fact, the only thing I would say in response to that is that it would go to the merits, and had it been raised, we would have waived our personal jurisdiction argument, challenging that. So I think that at this time, we are gonna stand by our challenge to personal jurisdiction, even though down the road, we may have arguments that go to the merits. Okay. Can I ask, what was Crump's role in the 2000 policy? Can you explain that in layman's terms? Sure. Well, Crump, just to explain who they are, they are a wholesale insurance broker. Our clients, CRC Insurance Services, did acquire them in 2012 and in 2013 at MERS. That's not a disputed fact. And as far as who they were in layman's terms, they are a wholesale insurance broker. They do not deal directly with the insured. They do not underwrite policies, and they certainly are not the insurer. None of those facts are in dispute. Instead, what you have is a retail insurance broker who works with, in this case, it was CrossTech Boiler Services out of Texas, but they're the retail insurance broker that works with the insurers and the applicants. And then the retail insurance broker sends it to our client, and they shop the market for it. So they go out and they try to find the best deal. So I still don't understand them. What do they do? You said they are not the insurer. They are not the insurer, and they are a wholesale insurance broker. Who does that mean? They shop the market for the retail insurance. So they go around and look for other insurers and connect them with clients. They connect them with the retail. Right, the insurance company, not the insured. The insurance company, they connect the insurance company with the retail insurance broker who is working with the applicant. So if we have in front of us, and we have lots of copies of this document that sets forth the terms of the policy, it bears Zurich's name, it's probably a steadfast document, and it describes something called the coverage territory. Is your client a party to this contract? No, it is not. And that is one of our points is we are not the insurer, and we're not a party to that contract. So let's ask about notice. CRC bought Crump. So CRC inherits Crump's liabilities, correct? Yes. All right, so here, Crump got some documents with Crosstech VI, not a name change, and there's a 340 area Crosstech station. So that made it to Crump. The question is, is that enough to put Crump, and thus your client, on notice that the contracted broker might be completed in the Virgin Islands? No, and well, let me, if I can answer your question this way, the reason why, and the document you're referring to, I believe, is a document from July of 2007. The policy was effective January of 2007. And when you're determining personal jurisdiction, specifically specific personal jurisdiction under section 4903 subsection B, there has to be, you have to first look at the claims, and subsection B says that it requires that when jurisdiction over a person is based solely upon 4903 subsection A, only a claim for relief arising from acts enumerated under 4903 subsection A may be asserted against the defendant. So as the district court correctly pointed out, all of the claims that Codrington brought dealt with the procurement of the policy. That policy, again, went into effect in January of 2007. Anything that happened afterward couldn't relate to that, the claims being asserted. So you're saying that the information that Judge Bibas asked you about co-stated the entry of the contract, and therefore it's not relevant to what purposeful availment your client would have engaged in? Yes, Your Honor, and I would say that the majority of the evidence that was presented to the district court falls into that category. There was a fuss in the district court about the defendant wanted to have a hearing, and the plaintiff wrote an email back or communicated and said, wait, no, it's not really necessary. You don't need to invest the resources. Now, each of you are blaming each other, not you personally, but your clients are blaming each other on, you should be able to have a hearing now, you didn't ask for it then. And the other side said, but you asked for it, why are you objecting? My question is, hearings are only necessary if there are factual disputes. What are the disputed facts? I know that an importer that may disagree about you and your adversary, but what are the disputed facts for personal jurisdiction? That's a very good question. And for purposes of what the material facts are for determining personal jurisdiction, there are none. I did wanna ask you one question with respect to the email chain. There was this email chain, right? And if I'm understanding it correctly, well, I'll just ask it this way. How many times removed is the original email that mentions Crossland before it ends up creating the record that we've got in front of us now? And just to make sure I'm referring to the correct email, is this the same email that talks, or is this the email that talks about increasing the insurance coverage? All right, perfect. All right, so that was a email from Provenza, the oil refinery to the insured and representative of the insured that then was forwarded on to Champion, which is, again, the insurance retail broker that then forwarded that on to our client. So I would say it would be twice removed. And the plaintiff argues that you had it, so you knew this was coming from Provenza, and you should have known, then put you on notice. What's wrong with that argument? What are the problems with that argument? Okay, putting aside what we've already discussed that it post-dates. Post-dates. Post-dates. I understand that argument. Right, and well, it certainly doesn't show, but it doesn't, there's nothing in those communications that establish or that indicate that there are any business dealings in the Virgin Islands. In addition, it does not show any conduct by our client, CRC, in purposefully availing itself to the privilege of doing business in the Virgin Islands. All right, thanks very much. Thank you, Your Honor. We'll hear from your colleague from Spedfast, and sir, thanks for appearing by rote, and can you help me with the pronunciation of your name? Yes, it's Mark Wilchenski. Okay, Wilchenski. Wilchenski. Gotcha, thank you. Thank you, Your Honors, for allowing me to do so virtually. I think, first off, I have a 100% different opinion as to the effect of the denial of coverage letter in 2010. That is what starts the statute of limitations that is always, I'm not aware of any case law that requires a consent judgment to begin the accrual process. 100% difference of opinion. All right, let's talk about indemnity, though. Were you ever asked to indemnify later after the 2018 consent judgment? By whom? By Congress, or anyone on the panel. I understand. Well, I would suppose that the best evidence of that would be all the come in these complaints, and rather than look to the statutes on which plaintiff contends somehow there's an implied duty to indemnify, one would look at the prayer for relief, and in fact, the prayer for relief. None of those complaints has anything whatsoever to do with indemnity and contribution. I understand that a palant would like there to be something like that, but they never argued it in response to the motion for summary judgment. Never put it in the complaint. And certainly, we never received any notice whatsoever or an additional demand for coverage, an additional demand, a tender of defense. Nothing was received until the complaint was filed and served. If I could ask you two questions. The first is on this issue of indemnification, do you recall whether or not plaintiff relied on this indemnification theory as part of the statute of limitations argument in the district court? Did not. Those words didn't, the concept wasn't there. That's why we argued that it should not be regarded by the court. So you say that it's your position and therefore it's been waived. Waiver is certainly one of them. The other part is that the concept doesn't apply. This is not a common law indemnity or contribution case. This is an insurance contract case. And the concept of indemnity that they are trying to hobble together here for the first time on appeal is based on common law indemnity contribution and inappropriate. That leads to my second question. Questions we asked your adversary was whether or not title 22 Virgin Island code section two captures indemnification claims. Can you educate us on your views and do you have any case law that would help us find support for those views? I understand the question. The statutory remedies are set forth in terms of damage, not there's a difference between damage and indemnity. There's no requirement. There is no express or implied remedy of indemnification based on title 22. I'm not aware of any case law that discusses that subject completely outside, well, my conceptualization of title 22, but I'd be happy to look for some case law on it. I'm just not aware of it. Is it your understanding that under Virgin Island's law, an indemnification claim is made pursuant to the common law rather than statutory law? It is certainly possible. Most of the case law of which I'm aware indicate that contribution and indemnity are common law concepts based on support. What we have here is obviously there are indemnification contracts and those contracts are subject to their own state of law, but what we have here and the concepts on which they rely, for instance, contribution. I've never heard of a contract case for contribution. Contribution requires some action on behalf of the indemnity to either indemnity or contributor to do something in the primary case. And that was never the case. That had nothing whatsoever to do with the original case and no relationship, no obligations related to the auto accident, which is a subject matter of the underlying case. Right, so the factual allegations is not a contribution claim kind of case. That's why I asked you only about indemnification. I just, Judge Rood, I just have one other question for the council, if I could. I asked counsel for CRC about the language in this Zurich steadfast contract. It's at 593, it's repeated again at 1310 of the appendix. And it has the coverage territories. My question for you is, do you agree with CRC that they are not a party to this agreement, this policy? They're not a party to the agreement, although they were part of the chain of communication. Okay, thank you. Mr. Wojcicki, I just have one question for you. It's been argued in briefs that the duty to defend is a continuing duty and therefore failure to defend is a continuing violation. What's the pushback on that, if you've got one? It's certainly, yes, we do. The continuing duty, continuing violation concept was well discussed in the Anthony versus BI Bank case. And there is a requirement under any contract or any view that I've seen related to the continuing violation, is there has to be an actual affirmative act on behalf of the person of whom indemnity is being required. And that's simply, there simply was no act here. The plaintiff's argument would be more plausible if it in fact done, as you had suggested, who did a new tender of defense at every major turn of the litigation. And in fact, that's the way it's normally done. If every time there is some major new decision, you send something to the carrier saying, now based on these new facts, we are requesting a tendering defense and indemnity. And if there had been a response to that, my argument would be weaker, but they never did it. They never once provided any notice of anything continuing on in the litigation until we received the complaint in 2009. All right, thank you, Mr. Motensky. Ms. Lawrence. Thank you. Thank you. Two things, well, major things. The first major issue is the email change from the containing the HOVENZA documents are not the only documents that we are relying on in this case. In the reply brief, I detailed specifically how CRC through CROM had all of the financial documents from Crosstek BI. In fact, Steadfast did an audit of Crosstek and all its entities. And because of that audit, they then changed the premium from $46,000 to $140,000 because of the wide scope of what was occurring. But didn't that happen after the accident in this case and therefore after the policy at issue was bound? No, in the brief, I thought I made this pretty clear. They retroactively charged them for that particular policy. I understand that, but my point is when you say retroactive, our focus needs to be on what did they know at the time they bound the policy? They had all of those financials from- They had it at the time they bound the policy. Are you sure? Yes. You just told me, though, that they used that financial information to retroactively increase the premium rate. That was just to demonstrate the amount of substantial revenue that CRC derived. They then got an additional $21,000. Do you have evidence that ties into it? Stop for just a second, we can't have cross-talk. Okay. Go ahead. Yeah, you know what I'm doing. Go ahead. So my recollection, please correct me if I'm wrong, is that when this was bound in 2007, the only information that CRC had with respect to any of the cross-tech entities was that they had a location in Texas. That was represented to be their place of business. And perhaps they had one in Louisiana. What can you point us to in the record by page that shows that in 2007, when this insurance contract was entered into, they had documents from cross-tech, or for that matter, from anybody, that told them these guys are doing business in the Virgin Islands. In 2007, when it was bound, point us to it in the record. I have the JA sites right in front of me. Please. JA 1047. That's the fax where CRUNK received all of the financials from cross-tech VI. And do those financials say this is business going on in the Virgin Islands? Not just a series of numbers, but it's business going on in the Virgin Islands. That's the point. Well, our position is cross-tech VI only operated in the Virgin Islands. That was a Virgin Islands entity. Now, I know we are here after litigation has commenced, where CRC is taking the position that they did not know. Okay, I'm looking at the documents at 1047. The addresses are Richardson, Texas, Dallas, Texas. Their phone numbers from there, et cetera. Yes, there's a 214, a Dallas area code on this. Now, the best thing for you is to mention VI, but VI can also be the Roman numeral six. How are they necessarily gonna know when just reading VI after name change? Here, you think Virgin Islands. If you're on the mainland, you may not think Virgin Islands. But cross-tech's affidavit is in the record where he specifically said- Where? The right to solicitation. Cross-tech's affidavit is in the record where he specifically says, it's at JA462, beginning of JA462, that they specifically knew, all of the insurers specifically knew, and everyone up in the chain specifically knew the full scope of his work in the Virgin Islands. So there are disputes of fact here. Well, wait a second. When you say there are disputes of fact, JA462, this is the 462? Yes. So what about the affidavit that he says? It is affidavit. He said that everyone knew the full scope of what, hold on, let me pull up, let me pull up specifically. It's in my notes. But I will try to go through it directly. And it was in the complaint as well. And the financials that were then- The affidavit does not say everyone knew. The paragraph 10 on page 464, he says, Cross-tech Boiler disclosed the relationship with Cross-tech BI to the insurance company at the time of acquiring the insurance. Doesn't? Well, that's not what, I remember, we're on the- I'm in the affidavit. I'm in the affidavit, page, JA464, paragraphs 10 and 11 are the closest to get, and all they say that Cross-tech Boiler worked, disclosed a relationship with Cross-tech BI. It says there were some documents sent, but we wanna see what those documents are. It doesn't say everybody knew that we were working in the BI. But that's what, but we are on a prima facie case without an evidentiary hearing, and all disputed facts are supposed to be resolved in our favor. Well, wait a second. When you say all disputed facts are resolved in your favor, you've made that assertion in your complaint. And that's not true for personal jurisdiction. When you're talking about- That's a 12B6. Right, that's a 12B6, we're on a 12B2. And once they come forward, you've gotta come forward with some kind of evidence. Exactly, of course. But then if- Your allegations are not, your allegations of your complaint are not evidence. So what is your evidence? Tom Cross's affidavit- This affidavit does not say that. I mean, show me words you think say that, but I'm looking at it. The paragraphs that you said, we construe that as if saying that he provided all the documents. And then the citations that I gave you, Cross said, and again, there wasn't an evidentiary hearing. So we are here trying to show you in the record exactly how, if the disputed facts are construed in the plaintiff's favor, you can conclude that there was knowledge here. Now, mind you- There is nothing in this affidavit that says that the insurers knew that, okay, Cross Tech Boiler sent some financial records, but nothing in here says, we told them we were working in the VI, they were working in the VI. It just says Cross Tech VI was incorporated in the VI, but it doesn't say anything about that being disclosed to the insurers. But they're claiming that it wasn't. Okay, well, I think we got it. Well, I have one more. I have one question for you, counsel. Gratisari said there was no indemnification argument made in the district court. Is he correct? No, I don't believe so. The whole crux of this case- No, I just need to know, it's all about issue preservation. And the answer is, yes, we argued that this was an indemnification case. And as a result, the statute of limitations starts consistent with the indemnification law. I mean, that's the only question I have is, was that argued in the district court? It was. And a part of the claims did not accrue because the indemnification would not have been triggered until the consent judgment was entered. In which pleading would have argued that in the district court? In the district, oh, the response to the supplemental opposition to the summary judgment motion, and on the objection and appeal, specifically in the objection and appeal, before the district court, it was argued there are distinct duties, a duty to defend, a duty to indemnify. And the magistrate judge erred in not understanding that that is exactly what occurred. So those are the two places where it was specifically done. Thank you. All right, thanks. We've got the matter under advisement. We'll go ahead and recess court.